## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **ADAMS EMS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:18-cv-1443** |
| | § | |
| **ALEX M. AZAR II,** | § | |
| **Secretary, UNITED STATES** | § | |
| **DEPARTMENT OF HEALTH &** | § | |
| **HUMAN SERVICES,** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT FOR EMERGENCY MANDAMUS RELIEF, INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND ATTORNEYS FEES

COMES NOW, Adams EMS, Inc., (the "Plaintiff") and files this its Complaint for Emergency Mandamus Relief, Injunctive Relief, Declaratory Judgment and Attorneys Fees against Alex M. Azar II, Secretary of the United States Department of Health and Human Services (the "Defendant"), and alleges and avers as follows:

## INTRODUCTION

1.    Utilizing statistical sampling, Defendant determined a $418,035 extrapolated overpayment.  The actual overpayment of the claims that comprised the sample was $14,846. Over the past year, Plaintiff, an ambulance company participating in the Medicare program, has endured a torturous administrative process – one that is supposed to take no more than a year – that not only has failed to adjudicate the appeal of the alleged overpayment, but deprived the supplier of statutorily and constitutionally required procedures.  Plaintiff has proceeded to the third of the four-stage administrative process, yet the hearing and decision that is required within 90 days may not be available for at least another three to five years due to the serious backlog of

agency appeals.  Despite its inability to adjudicate the overpayment appeal, Defendant has threatened 100% recoupment of the supplier's payments after completion of the second stage of the appeal, which would undoubtedly irreparably harm the supplier by forcing its closure and its filing of bankruptcy.  A successful business valued at $1 million would be destroyed. Twelve valuable employees would be terminated.  Patients relying on the supplier would have to find ambulance services elsewhere.  Plaintiff seeks two forms of relief to remedy Defendant's *ultra vires* acts.  It seeks mandamus *and* injunctive relief for the injuries inflicted upon the supplier and to remedy the statutory violations, its rights to procedural Due Process, and those that establish an *ultra vires* cause of action. [1]

2.	Plaintiff is entitled to mandamus relief compelling Defendant to perform its nondiscretionary duty in accordance with 42 U.S.C. §1395ff(c) to enforce the decision adjudicated at the second stage of the administrative process. [2]  On August 15, 2017, C2C Innovative Solutions, Inc., a Qualified Independent Contractor ("QIC"), issued an "unfavorable" decision on the overpayment determination.  The QIC issued a decision that sustained 100% of

---

[1]	Recently, in *Family Rehabilitation, Inc. v. Azar*, 886 F.3d. 496 (5th Cir. 2018), the Fifth Circuit held the trial court had jurisdiction under the collateral-claim exception to the administrative exhaustion requirement over a provider's due process and *ultra vires* claims.  The provider brought an action to prevent recoupment until a hearing could be provided in accordance with 42 U.S.C. §1395ff(d).  In *dicta*, the Court rejected the government's view that exhaustion of administrative remedies is a prerequisite to mandamus jurisdiction.

[2]	In *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011), the Fifth Circuit held the Medicare Act does not preclude mandamus jurisdiction to review otherwise unreviewable procedural issues.  It noted there is nearly unanimous consensus among the various Courts of Appeal that 28 U.S.C. §1361 provides jurisdiction in cases challenging the procedures used in administering benefits but unrelated to the merits of the benefits claim.  While the incidental consequence of not allowing the use of sampling limits the government's recovery to the *actual* overpayment liability of $14,846, the Court is only asked to order Defendant to complete affirmative actions to fulfill nondiscretionary duties under law.

the claim line denials.  However, with respect to the sampling issue, the QIC stated "the sample

size used by the ZPIC was not adequate to justify this demand amount."  It further stated "the

ZPIC would have had to recalculate the demand amount based on a different (more conservative)

extrapolation methodology."  Subsequently, on December 15, 2017, the QIC reopened the

decision and it revised the decision to reflect it was "partially favorable."  Again, Plaintiff did not

prevail on any individual claim determinations and the revised decision reflected that the QIC

had invalidated the sampling methodology and found the sample size was not adequate to justify

the overpayment amount.  Despite invalidating the sampling methodology, Novitas Solutions, the

Medicare Administrative Contractor ("MAC"), issued a recalculation letter that stated the current

overpayment amount was $401,661.80 apparently determined under a *new* methodology.

Because the use of statistical sampling was invalidated, the MAC was required to have issued a

determination limiting the recovery to the actual overpayment of $14,846.00.

3.     In addition, Plaintiff is entitled to injunctive relief that requires Defendant to

suspend imposition of recoupment until it can provide an ALJ hearing in accordance with 42

U.S.C. §1395ff(d).  Defendant has notified Plaintiff that it will recoup 100% of the provider's

Medicare payments to collect the $418,035 Medicare overpayment.  Yet, Defendant is unable to

adjudicate the ALJ hearing within 90 days as required by 42 U.S.C. §1395ff(d).  Plaintiff will be

unable to obtain an ALJ hearing for at least three to five *years*.  The collection and recoupment of

the extraordinary amounts at issue, without providing Plaintiff the hearing in accordance with the

adjudicatory time frame as required by the applicable statute, violates the provider's Due Process

rights.  The government's attempted recoupment while a genuine billing dispute remains mired

in the growing backlog of hundreds of thousands of claims pending before the HHS Office of

3

Medicare Hearings and Appeals ("OMHA") will irreparably harm Plaintiff by forcing the destruction of its business and the ensuing closure of its operations.  Patients relying on the supplier will have to find ambulance services elsewhere.  What should not take more than 90 days may take as long as five years.  The government's egregious *ultra vires* conduct can only be remedied by a form of injunctive relief otherwise unavailable through the administrative process.

## PARTIES

4.      Plaintiff Adams EMS, Inc., a Texas corporation, is an ambulance supplier located in Houston, Texas, that participates as supplier in the Medicare program.

5.      Defendant, Alex M. Azar II, in his official capacity, is the Secretary of the United States Department of Health and Human Services ("HHS"), the governmental department which contains the Centers for Medicare and Medicaid Services ("CMS"), the agency within HHS that is responsible for administration of the Medicare and Medicaid programs.  He may be served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure by serving the U.S. Attorney for the district where the action is brought, serving the Attorney General of the United States in Washington, D.C., by certified mail, and by serving the United States Department of Health and Human Services, by certified mail.

## JURISDICTION

6.      This Court has jurisdiction over this action under 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1361 (jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq.*

7.      The Court has jurisdiction over the lawsuit pursuant 42 U.S.C. 405(g), 1395ii and

1395ff(b), and on the authority of *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Section of 405 of the statute "would not simply channel review through the agency, but would mean no review at all." *Illinois Council,* 529 U.S. at 17. Therefore, the exhaustion requirement is excepted under *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). This exception was explicitly reaffirmed by *Illinois Council*, 529 U.S. at 19-23. The amount in controversy exceeds the $1,000 jurisdictional limit.

8.      The Court also has jurisdiction pursuant to 28 U.S.C. §1331 under the clandestine agency policy exception to the Medicare exhaustion requirement established by *Bowen v. City New York*, 476 U.S. 467 (1986). Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. The failure provide a hearing in accordance within 90 days is tantamount to a "fixed clandestine policy" that violates 42 U.S.C. §1395ff(d). Plaintiff has been deprived of the administrative process that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action. Thus, the exhaustion requirement is excused under *City of New York*.

9.      Finally, the Court has jurisdiction pursuant to  28 U.S.C. §1331 under the entirely

collateral Constitutional claim exception to the Medicare exhaustion requirement established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Such failure violates Plaintiff's constitutional right of Due Process of Law guaranteed by the U.S. CONST. amend. V, §1. Moreover, the failure to provide an ALJ hearing within 90 days and the request to suspend recoupment temporarily is not a benefits determination, but an otherwise unreviewable procedural issue. Jurisdiction is based upon Plaintiff's constitutional claim that is collateral to a substantive claim for benefits.

## VENUE

10.     Venue is proper in this Court under 42 U.S.C. §§505(g), 1395ii and 1395ff(b), and 28 U.S.C. §1391(b) and (e), and 5 U.S.C. §703.

## APPLICABLE MEDICARE LAWS

### The Medicare Program

11.     As part of the Social Security Amendments of 1965, Congress established  the Medicare program:  a national health insurance plan to cover the cost of medical care for the elderly and disabled. *See* 42 U.S.C. §1395 *et seq*. Officially known as "Health Insurance Benefits for the Aged and Disabled," it provides basic protection against the costs of inpatient hospital and other institutional provider care. It also covers the costs of physician and other healthcare practitioner services and items not covered under the basic program. In 1997,

beneficiaries were extended the option of choosing a managed care plan.  More recently, in 2006, the program was expanded further to include a prescription drug benefit.

### Ambulance Services

12.    Medicare covers ambulance transportation furnished to beneficiaries by suppliers participating in the program.  *See* 42 U.S.C. §139x(s)(7); 42 C.F.R. §410.40.  Such ambulance trips are reimbursable only if other means of transportation would be contraindicated.  Nonemergency transportation is reimbursable only if the individual is unable to get up from bed without assistance, unable to walk, and unable to sit in a chair.

### Payment and Audit Functions

13.    Medicare's payment and audit functions are performed by various federal contractors.  For instance, the payment of the ambulance transportation services claims at issue in this case was made by Novitas Solutions.  Various other contractors, like Health Integrity, L.L.C., a Zone Program Integrity Contractor (or "ZPIC"), [3] investigate instances of suspected fraud, waste, and abuse as well as identify any improper payments that are to be collected by Administrative Contractors.

### Appeal Process

14.    Ambulance suppliers participating in the Medicare program are entitled to appeal an initial action.  *See* 42 U.S.C. §1395ff.  Federal regulations establish an elaborate administrative appeal process to review the adverse action.  *See* 42 C.F.R. Subpart I – Determinations, Redeterminations, and Appeals Under Original Medicare.  A supplier

---

[3]    Qlarent, L.L.C., a Unified Program Integrity Contractor, (or "UPIC") has replaced the ZPIC to perform audit, oversight and antifraud, waste and abuse functions.

dissatisfied with an initial determination may request a Redetermination by a contractor in accordance with 42 C.F.R. §§405.940 through 405.958.  The Redetermination must be issued within 60 calendar days.  If a supplier is dissatisfied with a Redetermination decision, it may request a Reconsideration by a Qualified Independent Contractor (or "QIC") in accordance with 42 C.F.R. §§405.960 through 405.986.  The Reconsideration must be issued within 60 calendar days.  In the event the supplier is dissatisfied with the Reconsideration decision, it may request an Administrative Law Judge (or "ALJ") hearing in accordance with 42 C.F.R. §§405.1000 through 405.1054.  The ALJ must issue a decision within 90 calendar days.  The supplier may request review of the ALJ's decision by the Medicare Appeals Council (or "MAC") in accordance with 42 C.F.R. §§405.1100 through 405.1140.  The MAC must issue a decision within 90 calendar days. The MAC's decision is the final agency action, and it is subject to judicial review.  *See* 42 U.S.C. §1395ff; 42 C.F.R. §§405.1130, 405.1132, 405.1134. *See also* 42 U.S.C. §405(g).

### Appeal Backlog and Resulting Delays in Adjudication Times

15.     Despite the statutorily-mandated time periods governing the appeals process, in practice it takes a supplier or provider much longer to fully pursue its claim through the Medicare appeals process due to the growing backlog of Medicare appeals.

16.     An exponential increase in claim appeals has caused this growing delay in the Medicare appeals process, fueled in large part by the Medicare Fee-For Service-Recovery Audit Contractor Program ("RAC Program"), a demonstration program that was ultimately instituted and expanded in 2010.  Under the RAC Program, aggressive government contractors, such as ZPICs, have issued numerous inappropriate claim denials, forcing a disproportionate number of providers into the Medicare appeals system to challenge these denials.

17.     Indeed, the number of Medicare appeals filed grew from 35,831 appeals in Fiscal Year ("FY") 2009, the last full fiscal year before the RAC Program's official expansion, to over 594,000 in FY 2017 – an almost twentyfold increase in claims.  *American Hospital Assoc. v. Burwell*, 812 F.3d 183, (D.C. App. Feb. 9, 2016), at Doc 58-1, Decl. of Jennifer Moughalian, ¶ 7.

18.     Based on current data OMHA predicts that the number of pending administrative appeals will rise to 979,591 – one million – by the end of FY 2021. (Sept. 30, 2021). *Id*., at ¶ 9.

19.     Even in the best case scenario, where in the FY 2018 President's Budget includes legislative and budget proposals aimed at improving the efficiency of the Medicare appeals process, OMHA still predicts that the number of pending appeals will be over 500,000 through FY 2019, and under the best circumstances, the number of appeals will have only dropped to 375,674 by the end of FY 2021.  *Id*., at ¶¶ 12, 13.

20.     By OMHA's own admission, the ALJ's have simply been unable to keep up with the increasing volume of Medicare appeals.  As of OMHA's September 1, 2017 status report, OMHA has received 167,899 new claims for adjudication in 2017, but has only been able to adjudicate 76,000 of its total 595,000 outstanding claims.  *Id*. at Ex. 1.  The rate at which the ALJs can adjudicate these appeals is far below the rate at which new appeals are being filed, resulting in a longer and ever-growing backlog.

21.     As of February 2014, the average wait time for a provider's case to even be assigned to an ALJ docket was twenty-eight (28) months.  *See* OMHA Medicare Appellant Forum Presentation (Feb. 12, 2014), available at https://www.hhs.gov/sites/default/files/omha/OMHA%20Appellant%20Forum/omha_medicare_appellant_forum_present_actions.pdf (last visited October 26, 2017) (hereinafter "OMHA

Presentation").

22.     Based on the growing number of appeals cited above, the situation is only

deteriorating.  The predicated wait times to obtain a hearing once a case is assigned to an ALJ

means providers who lodge new appeals from the QIC to the ALJ, can realistically expect to wait

three to five years – and likely longer – to even obtain an ALJ hearing, much less a decision.

### CONDITIONS PRECEDENT

23.     All conditions precedent have been performed or have occurred.

### FACTS

### Medicare Ambulance Supplier

24.     Plaintiff Adams EMS, Inc., a Texas corporation, is an ambulance company

located in Fresno, Texas, and it participates as a supplier in the Medicare program.

25.     In 2015, Plaintiff was a successful business valued at $1 million, had 12 valuable

employees, and many patients relying on the supplier for their ambulance services.

### Initial Determination

26.     On December 27, 2016, Health Integrity, L.L.C., the Zone Program Integrity

Contractor ("ZPIC"), determined a $418,035 overpayment for claims submitted during the period

of July 17, 2012 to January 15, 2016. [4]  It extrapolated the overpayment using statistical

sampling.  The actual amount of the overpayment was $14,846, which was determined based

upon a review of the 33 claims (with 132 claim lines) that comprised the sample.

---

[4]     In addition, a separate notice was issued on December 27, 2016 and Plaintiff was
informed of a second Medicare overpayment in the amount of $461,283 for a different time
period.  It also was calculated using sampling.  The matter was resolved at the second stage of the
administrative appeal at which Plaintiff reduced the liability to $47,349 with interest.

27.     On January 11, 2017, Novitas Solutions, a Medicare Administrative Contractor ("MAC") notified Plaintiff of the $418,035 Medicare overpayment.  According to the notice, the overpayment was based upon a post-pay investigation conducted by Health Integrity, L.L.C. and reflected the Medicare overpayment determination issued on December 27, 2016.  The notice, however, was not accompanied by any of the essential statistical data used to calculate the overpayment, nor did it include critical evidence regarding the audit.  This notice informed the Provider of its administrative appeal rights.

<strong>Redetermination</strong>

28.     On or about February 7, 2017, Plaintiff requested a redetermination of the overpayment determination pursuant to 42 C.F.R. §405.940 *et seq*., that disputed and contested the overpayment determination.

29.     Plaintiff requested a redetermination of this decision arguing, among other things, that the ZPIC had failed to adhere to statutory and regulatory guidelines in denying the claims comprising the sample.  It also argued the statistical sampling and "Ratio Estimator" methodology used to calculate the alleged overpayment was not conducted pursuant to statutory and regulatory guidelines, and therefore, the extrapolation does not reflect a proper and accurate overpayment amount.

<strong>Decision</strong>

30.     On April 5, 2017, the MAC issued a fully unfavorable redetermination decision sustaining the overpayment determination.

<strong>Reconsideration</strong>

31.     On or about June 9, 2017, Plaintiff requested a reconsideration of this decision

11

arguing, among other things, that the ZPIC had failed to adhere to statutory and regulatory guidelines in denying the claims comprising the sample.  It also argued the statistical sampling and "Ratio Estimator" methodology used to calculate the alleged overpayment was not conducted pursuant to statutory and regulatory guidelines, and therefore, the extrapolation does not reflect a proper and accurate overpayment amount.

### Decision

32.     On August 15, 2017, C2C Innovative Solutions, Inc., a Qualified Independent Contractor (QIC), issued an "unfavorable" decision on the overpayment determination.   The QIC issued a decision that sustained 100% of the claim line denials.  However, with respect to the sampling issue, the QIC's  stated "the sample size used by the ZPIC was not adequate to justify this demand amount."  It further stated "the ZPIC would have had to recalculate the demand amount based on a a different (more conservative) extrapolation methodology."

### Reopening

33.     Subsequently, on December 15, 2017, the QIC reopened its August 15th  decision and revised the decision to reflect it was "partially favorable. "   Again, Plaintiff did not prevail on any individual claim determinations and the revised decision reflected that the QIC had found the sample size was not adequate to justify the overpayment amount.

34.     Specifically, the QIC issued a decision that was "unfavorable" and sustained 100% of the claim line denials.  However, with respect to the sampling issue, the QIC's reviewers stated "the sample size used by the ZPIC was not adequate to justify this demand amount" and that the ZPIC must recalculate the overpayment "using a different (more conservative) extrapolation methodology."

12

35.     Although the Medicare contractor issued a reconsideration decision, it failed to recalculate the overpayment amount.

## ALJ Hearing

36.     On or about February 12, 2018, Plaintiff requested an ALJ Hearing of this decision arguing, among other things, that the QIC had failed to adhere to statutory and regulatory guidelines in denying the claims comprising the sample.  It also argued the statistical sampling and "Ratio Estimator" methodology used to calculate the alleged overpayment was not conducted pursuant to statutory and regulatory guidelines, and therefore, the extrapolation does not reflect a proper and accurate overpayment amount.

37.     Based on Defendant's recent reports, the hearing and decision that is required within 90 days may not be available for at least another three to five years due to the serious backlog of agency appeals.

## Recalculation

38.     Despite invalidating the sampling methodology, Novitas Solutions, the Medicare Administrative Contractor ("MAC"), issued a recalculation letter stating the current overpayment amount was $401,661.80 determined by a *new* methodology.  Because the use of statistical sampling was invalidated, the MAC was required to have issued a determination limiting recovery to the actual overpayment or $14,846.

39.     Defendant has threatened to impose recoupment to collect the alleged the $418,035 extrapolated Medicare overpayment in accordance with 42 U.S.C. §1395ddd(f)(2) after issuance of the reconsideration decision.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

40.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.  Plaintiff has been deprived of the administrative process that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action.  No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions.  Such failure violates 42 U.S.C. §1395ff(d) and Plaintiff's constitutional right of Due Process of Law guaranteed by the U.S. CONST. amend. V, §1.  Under these facts, the administrative exhaustion requirement is excused.

## CLAIMS FOR RELIEF

### Count 1 - Violation of Procedural Due Process of Law

41.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

42.     The Fifth and Fourteenth Amendments to the U.S. Constitution guarantee that no person shall be deprived of life, liberty, or property without Due Process of Law.

43.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

44.     Despite its inability to adjudicate the overpayment appeal, Defendant has threatened 100% recoupment of the supplier's payments after completion of the second stage of the appeal, which would undoubtedly irreparably harm the supplier by forcing its closure and its filing of bankruptcy.

45.     Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

46.     Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

47.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

**Count 2 - Violation of the Medicare Act**

48.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

49.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

50.     Despite its inability to adjudicate the overpayment appeal, Defendant has threatened 100% recoupment of the supplier's payments after completion of the second stage of the appeal, which would undoubtedly irreparably harm the supplier by its forcing closure and its filing of bankruptcy.

51.     Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

52.     Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

53.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment until it can provide a hearing and decision within 90 days or otherwise can

follow the statutorily and constitutionally required procedures.

### Count 3 - Violation of the Statutory Limitation on Recoupment

54.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

55.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

56.     Despite its inability to adjudicate the overpayment appeal in accordance with 42 U.S.C. §1395ff(d), Defendant has threatened 100% recoupment of the supplier's payments after completion of the second stage of the appeal, which would undoubtedly irreparably harm the supplier by forcing its closure and its filing of bankruptcy.

57.     Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

58.     Defendant has effective deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

59.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

### Count 4 – Ultra Vires

60.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

61.     Defendant's failure to make available an ALJ hearing within 90 days while

imposing recoupment violates statutory and constitutionally required procedures.

62.     Despite its inability to adjudicate the overpayment appeal, Defendant has threatened 100% recoupment of the supplier's payments after completion of the second stage of the appeal, which would undoubtedly irreparably harm the supplier by forcing closure and its filing of bankruptcy.

63.     Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

64.     Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

65.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment until it can provide a hearing a decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

### Count 5 – Mandamus

66.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

67.     On August 15, 2017, C2C Innovative Solutions, Inc., a Qualified Independent Contractor (QIC), issued a corrected "unfavorable" decision on the overpayment determination. The QIC issued a decision that sustained 100% of the claim line denials.  However, with respect to the sampling issue, the QIC  stated "the sample size used by the ZPIC was not adequate to justify this demand amount."  It further stated "the ZPIC would have had to recalculate the demand amount based on a a different (more conservative) extrapolation methodology."

17

68.     Subsequently, on December 15, 2017, the QIC reopened its decision issued and it revised the decision to reflect it was "partially favorable. "  Again, Plaintiff did not prevail on any individual claim determinations and the revised decision reflected that the QIC had found the sample size was not adequate to justify the overpayment amount.

69.     Despite invalidating the sampling methodology, Novitas Solutions, the Medicare Administrative Contractor ("MAC"), erroneously issued a recalculation letter stating the current overpayment amount was $401,661.80 determined by a *new* methodology.

70.     Because the use of statistical sampling was invalidated, and the $418,035 extrapolated overpayment set aside, the MAC was required to have issued a determination limiting recovery to the actual overpayment or $14,846.

71.     The Mandamus Act, 28 U.S.C. §1361, provides that federal district courts shall have jurisdiction over any action in the nature of mandamus, and may compel an officer or employee of the United States or any agency thereof to perform a duty owed to Plaintiff.

72.     Exhaustion of administrative remedies is not a requirement for mandamus jurisdiction.  *Family Rehabitation, Inc. v. Azar*, 886 F.3d 496, 506 (5th Cir. 2018).

73.     Accordingly, Plaintiff has a clear right to mandamus relief, Defendant a clear duty to act, and no other adequate remedy is available, and this Court should issue a decision compelling Defendant to perform its nondiscretionary duty in accordance with 42 U.S.C. §1395ff(c) to enforce the decision adjudicated at the second stage of the administrative process which invalidated the sampling methodology and set aside the $418,035 extrapolated overpayment thereby limiting recovery to the actual overpayment or $14,846.

**Count 6 – Declaratory Judgment**

18

74.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

75.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

76.     Despite its inability to adjudicate the overpayment appeal, Defendant has threatened 100% recoupment of the supplier's payments after completion of the second stage of the appeal, which would undoubtedly irreparably harm the supplier by forcing closure and its filing of bankruptcy.

77.     Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

78.     Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

79.     Accordingly, Plaintiff seeks a Declaratory Judgment pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57 that declares Defendant has violated Plaintiff's rights under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

**REQUEST FOR PRELIMINARY INJUNCTION**

80.     Plaintiff will suffer irreparable injury if Defendant is not required to temporarily suspend recoupment until it can provide a hearing decision within 90 days or otherwise follow the statutorily and constitutionally required procedures.  Indeed, Defendant has effectively deprived the provider of the very administrative process that is required under 42 U.S.C.

§1395ff(b) due to its inability to adjudicate the appeal.  Thus, Plaintiff is entitled to injunctive

relief that requires Defendant to temporarily suspend recoupment.  Defendant has threatened to

impose recoupment to collect the alleged the $418,035 extrapolated Medicare overpayment in

accordance with 42 U.S.C. §1395ddd(f)(2) after issuance of the reconsideration decision.  Yet,

the government's attempted recoupment while a genuine billing dispute remains mired in the

growing backlog of hundreds of thousands of claims pending before OMHA will irreparably

harm Plaintiff through the destruction of its business and ultimately force the provider to file

bankruptcy.  Also, it will cause the Medicare beneficiaries relying on the provider to

unexpectedly seek essential ambulance transportation services elsewhere.  The collection and

recoupment of the extraordinary amounts at issue without providing Plaintiff notice and a

meaningful opportunity to be heard, as required by the applicable statute, violates Plaintiff's Due

Process rights.  The government's egregious *ultra vires* conduct can only be remedied by a form

of injunctive relief otherwise unavailable through the administrative process.  Clearly, the

combined threats of going out of business and disruption to Medicare patients are sufficient for

irreparable harm.  *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 506 (5th Cir. 2018).

81.     There is no adequate remedy at law because the improper recoupment of the

alleged Medicare overpayment will force Plaintiff to close its doors and to file bankruptcy, and in

doing so the supplier loses any hope of a meaningful resolution of this dispute.  In other words,

Plaintiff may ultimately prevail in its administrative appeal, but as a practical matter the provider

will be forced out of business and required to file bankruptcy because of recoupment long before

this matter is adjudicated to finality under the process contemplated by law.

82.     There is a substantial likelihood that Plaintiff will prevail on the merits because

Defendant failed to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

83.    The harm faced by Plaintiff outweighs the harm that would be sustained by Defendant if injunctive relief is not granted.  The provider will be forced to closed its doors and file bankruptcy because of Defendant's *ultra vires* acts.  Defendant, on the other hand, will only be required to do what it is obligated to do under law.

84.    Issuance of a preliminary injunction would not adversely affect the public interest. On the contrary, such relief ensures that Defendant will no longer act *ultra vires* in the calculation and collection of the alleged overpayment.

85.    Plaintiff is willing to post a bond in the amount the Court deems appropriate, but it should not be required to do so on the facts of this case because Defendant is otherwise obligated to pay for ambulance transportation services for Medicare beneficiaries under its care.

86.    Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction.

**REQUEST FOR PERMANENT INJUNCTION**

87.    Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendant.

**ATTORNEY FEES & COSTS**

88.    Plaintiff is entitled to an award of attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. §2412, upon showing the applicant is a "prevailing party;" a showing that the applicant is "eligible to receive an award; and a statement of "the amount sought,

including an itemized statement from any attorney . . . stating the actual time expended and the rate" charged.  The prevailing party is entitled to such attorney fees unless the government's position was "substantially justified" or special circumstances make an award unjust.

## PRAYER

89.     For these reasons, Plaintiff asks for judgment against Defendant for the following:

    a.     Issuance of a writ of mandamus that compels Defendant to perform its nondiscretionary duty in accordance with 42 U.S.C. §1395ff(c) to enforce the decision adjudicated at the second stage of the administrative process which invalidated the sampling methodology and set aside the $418,035 extrapolated overpayment thereby limiting recovery to the actual overpayment or $14,846.

    b.     Issue mandatory injunctive relief that requires Defendant to suspend recoupment until it can provide a hearing a decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

    c.     Issue declaratory judgment declaring that Defendant has violated Plaintiff's rights under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

    d.     Reasonable attorney fees.

    e.     Court costs.

      f.      All other relief the Court deems appropriate.

Respectfully submitted,

KENNEDY
Attorneys and Counselors at Law

/s/ Mark S. Kennedy

_____

MARK S. KENNEDY
State Bar of Texas No. 24000122
Southern District Bar No. 435115
LURESE TERRELL
State Bar of Texas No. 24008139
Southern District of Texas 33360
JOANNA A. MARTIN
State Bar of Texas No. 24072153
Southern District Bar No. 1287331
C. TREY SCOTT
State Bar of Texas No. 24083821
Southern District Bar No. 3097879
12222 Merit Drive, Suite 17500
Dallas, TX 75251
Telephone: (214) 445-0740
Fax: (972) 661-9320
markskennedylaw@msn.com
**ATTORNEYS FOR PLAINTIFF**