IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAMS EMS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-1443 |
| | § | |
| ALEX M. AZAR II, SECRETARY, | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HEALTH AND HUMAN SERVICES | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

On June 14, 2018, the plaintiff, Adams EMS, Inc., an ambulance company participating in the Medicare program as a supplier, applied for a temporary restraining order against the Secretary of the United States Department of Health and Human Services, in his official capacity. (Docket Entry No. 5). The relief Adams EMS seeks is to require HHS to suspend the recoupment of an alleged $418,035 Medicare overpayment. The basis is the alleged failure to provide the procedures for, and to timely adjudicate, an administrative appeal from the overpayment and recoupment findings.

On July 5, the parties presented oral argument on the temporary restraining order application. (Docket Entry No. 17). The court granted the temporary restraining order on the record, conditioned on the payment of a bond by Adams EMS. The court ordered the parties to attempt a joint temporary restraining order, but the parties filed separate opposed orders. (Docket Entry Nos. 19, 20). The court, acting within its equitable power under Rule 65 of the Federal Rules of Civil

Procedure, enters this temporary restraining order after considering the parties' submissions, the arguments of counsel, the record, and the applicable law.

The reasons for the temporary restraining order are explained below.

## I. Background

### A. The Medicare Program and Appeal of Audited Payment Decisions

Medicare reimburses beneficiaries ambulance transport when other transport means are unavailable or inadvisable. 42 U.S.C. § 139x(s)(7); 42 C.F.R. § 410.40. HHS hires contractors to complete post-payment review of reimbursements to identify and investigate cases of suspected fraud. *See* 42 U.S.C. § 1395kk-1. Ambulance suppliers participating in Medicare can appeal overpayment decisions made after the post-payment review. 42 U.S.C. § 1395ff.

In a case presenting very similar issues, the Fifth Circuit recently explained the four-step administrative appeals process:

> A provider must go through a four-level appeals process. First, it may submit to the [Medicare administrative contractor] a claim for redetermination of the overpayment. 42 U.S.C. § 1395ff(a)(3)(A). Second, it may ask for reconsideration from a Qualified Independent Contractor ("QIC") hired by [HHS's Centers for Medicare and Medicare services] for that purpose. *Id.* § 1395ff(c), (g); 42 C.F.R. § 405.904(a)(2). If the [qualified independent contractor] affirms the [Medicare administrative contractor's] determination, the [Medicare administrative contractor] may begin recouping the overpayment by garnishing future reimbursements otherwise due the provider. 42 U.S.C. § 1395ddd(f)(2); 42 C.F.R. § 405.371(a)(3).
>
> Third, the provider may request de novo review before an [administrative law judge] within the Office of Medicare Hearings and Appeals (OMHA), an agency independent of CMS. 42 U.S.C. § 1395ff(d); 42 C.F.R. § 405.1000(d). The [administrative law judge] stage presents the opportunity to have a live hearing, present testimony, cross-examine witnesses, and submit written statements of law and fact. 42 C.F.R. § 405.1036(c)–(d). The [administrative law judge] "shall conduct and conclude a hearing . . . and render a decision . . . not later than" 90 days after a timely request. 42 U.S.C. § 1395ff(d)(1)(A). Fourth, the provider may appeal to the Medicare Appeals Council ("Council"), an organization independent of both CMS and OMHA. 42 C.F.R. § 405.1100. The [Medicare appeals council] reviews

2

the [administrative law judge's] decision de novo and is similarly required to issue a final decision within 90 days. *Id.* Furthermore, if the [administrative law judge] fails to issue a decision within 90 days, the provider may "escalate" the appeal to the [Medicare appeals council], which will review the [qualified independent contractor's] reconsideration. *Id.*

*Family Rehab., Inc. v. Azar*, 886 F.3d 496, 499–500 (5th Cir. 2018).

When a party appeals to the Medicare appeals council under 42 C.F.R. § 405.1016, the council is to issue a final decision or dismissal order or remand the case to the chief administrative law judge within 180 days of the receipt for escalation. 42 C.F.R. § 405.1100. Because this escalated appeal can occur only after the administrative law judge has failed to issue an order within 90 days, and because the Medicare appeals council has 180 days to issue a decision, it can take a party 270 days, or more, to receive a decision after requesting review before an administrative law judge.

Adams EMS alleges that a large and growing backlog of Medicare appeals has slowed the time a supplier needs to complete the Medicare appeals process. (Docket Entry No. 1 at ¶ 15). The increase in claims filed is the reason. *Id.* at ¶ 16. From January to September 1, 2017, 167,899 new claims for adjudication had been filed, but only 76,000 of a total of 595,000 outstanding claims were adjudicated. *Id.* at ¶ 20. The predicted wait times between getting a reconsideration decision from a qualified independent contractor and having a hearing before an administrative law judge is between 3 to 5 years, and sometimes longer. *Id.* at ¶ 22; *Family Rehab.*, 886 F.3d at 500 ("According to [the plaintiff]—and effectively conceded by the government—it will be unable to obtain an [administrative law judge] hearing for at least another three to five *years*." (emphasis in original)).

**B.     Facts**

Adams EMS alleges the following facts in its complaint. On December 27, 2016, Health Integrity, LLC, a zone program integrity contractor that investigates instances of suspected fraud, waste, and abuse as well as improper Medicare payments, determined that Adams EMS had received $418,035 in overpayment on claims submitted from July 17, 2012 to January 15, 2016. (Docket Entry No. 1 at ¶ 26). The actual amount of the overpayment was $14,846; the $418,035 amount was reached through extrapolating using statistical sampling. *Id.* Novitas Solutions, a Medicare administrative contractor, notified Adams EMS of the $418,035 overpayment and recoupment obligation. *Id.* at ¶ 27. Adams EMS alleges that the notice "was not accompanied by any of the essential statistical data used to calculate the overpayment, nor did it include critical evidence regarding the audit." *Id.*

On February 7, 2017, Adams EMS asked for a redetermination of the overpayment determination. It argued that Health Integrity had failed to adhere to statutory and regulatory guidelines in denying the claims based on the statistical sampling and extrapolation sample. *Id.* at ¶ 28–29. Adams EMS also argued that the extrapolation did not properly or accurately show the fact or amount of overpayment because the statistical sampling methodology was not consistent with statutory and regulatory guidelines. *Id.* at ¶ 29.

On April 5, 2017, Novitas Solutions sustained the overpayment determination. *Id.* at ¶ 30. On June 9, 2017, Adams EMS requested reconsideration. *Id.* at ¶ 31. On August 15, 2017, C2C Innovative Solutions, a qualified independent contractor, sustained the overpayment determination and stated that: "the sample size used by the [Health Integrity] was not adequate to justify this demand amount," and that Health Integrity "would have had to recalculate the demand amount based on a different (more conservative) extrapolation methodology." *Id.* at ¶ 32. On December 15, 2017,

4

C2C Innovation Solutions reopened its August 15 decision and revised it to reflect that it was "partially favorable." *Id.* at ¶ 33. Adams EMS still lost on each individual claim in the contractor's revised decision, which again stated that the sample Health Integrity used was inadequate to justify the demand amount. *Id.* at ¶ 34. Health Integrity issued a reconsideration decision, but that decision did not recalculate the overpayment amount. *Id.* at ¶ 35.

On February 12, 2018, Adams EMS requested a hearing before an administrative law judge, arguing that C2C Innovation Solutions had failed to adhere to statutory and regulatory guidelines when it denied the claims comprising the sample, and that the statistical sampling methodology was improper. *Id.* at ¶ 36. Adams EMS alleges that, "[b]ased on Defendant's recent reports, the hearing and decision that is required within 90 days may not be available for at least another three to five years due to the serious backlog of agency appeals." *Id.* at ¶ 37.

Novitas Solutions issued a recalculation letter stating a new overpayment amount, $401,611.80, that it stated had been done using a new methodology.[1] *Id.* at ¶ 38. Adams EMS alleges that, because the use of statistical sampling and extrapolation was invalidated, Novitas Solutions should have limited its overpayment and recoupment determination to $14,846, the actual overpayment amount. *Id.* Instead, HHS has threatened to impose recoupment to collect $418,035, the original overpayment determination. *Id.* at ¶ 39.

Federal courts are vested with jurisdiction over only a "final decision" of HHS when dealing with claims "arising under" the Medicaid Act. 42 U.S.C. § 405(g)–(h); 42 U.S.C. § 1395ff(b)(1)(A). Adams EMS argues that it has exhausted its administrative remedies because HHS has failed to

---

[1] Adams EMS does not explain how Novitas Solutions' new methodology differed from the original methodology.

provide a hearing before an administrative law judge within 90 days, as required. *Id.* at ¶ 40. Adam EMS asserts that it cannot challenge HHS's "failure to make available an [administrative law judge] hearing within 90 days while imposing recoupment . . . ." *Id.* at ¶ 8.

## II. Temporary Restraining Order

In its complaint, Adams EMS alleged that HHS threatened to impose recoupment. (Docket Entry No. 1 at 2). It now alleges that HHS has imposed 100% recoupment. (Docket Entry No. 5 at 2). Adams EMS argues that allowing HHS to "recoup over $400,000 from Plaintiff and force closure and financial ruin of its business while Plaintiff has been entirely deprived of its right to pursue a meaningful administrative appeal of its overpayment" violates due process. *Id.* at 8. It asks that recoupment be suspended until HHS complies with the statutory procedures that protect against premature and excessive recoupment. *Id.* at 9.

### A. Legal Standard

A party seeking a temporary restraining order must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater injury will result from denying the temporary restraining order than if it is granted; and (4) that a temporary restraining order will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

### B. The *Family Rehab* Opinion

A case from the Northern District of Texas decided last month, in which the court granted a temporary restraining order on very similar facts, is helpful. *Family Rehab. v. Azar*, 2018 WL 2670730 (N.D. Tex. June 4, 2018). Family Rehab provided medical services to patients in their

6

homes, assisted living facilities, and retirement communities. *Id.* at *1. It received most of its income from Medicare. *Id.* Family Rehab was issued an overpayment demand letter for more than $7.5 million, and began the administrative appeals process. *Id.* Like Adams EMS, Family Rehab made it through the first two steps of submitting a claim for redetermination to the Medicare administrative contractor and asking for reconsideration from a qualified independent contractor. *Id.* Family Rehab then took the third step and requested a hearing before an administrative law judge. *Id.* The hearing did not take place within the required 90 days. *Id.* HHS nonetheless began withholding Medicare reimbursements to Family Rehab to recoup the alleged overpayments. *Id.* Family Rehab laid off almost 89% of its staff and cut its patient numbers from 289 to 8 as a result of the recoupment. *Id.* Family Rehab asserted that it would be forced to file bankruptcy and shut down if HHS continued to impose recoupment. *Id.*

Family Rehab brought procedural due process and *ultra vires* claims. *Id.* at *2. The Northern District of Texas granted Family Rehab's temporary restraining order application, finding that: (1) Family Rehab had demonstrated a substantial likelihood of success on at least the procedural due process claim by showing that HHS had not complied with statutory procedures; (2) Family Rehab had substantially established a substantial threat of immediate and irreparable harm because it would be forced to permanently close its doors if HHS continued the process of recoupment; (3) the balance of injury weighed in favor of granting relief because Family Rehab would be forced to shut its doors, employees would lose jobs, and patients would lose their home healthcare if the temporary restraining order was not granted, while HHS would be able to recoup any overpayments if the administrative law judge eventually ruled in their favor; and (4) no public

7

interest would be adversely affected by granting a temporary restraining order; instead, the public would benefit from the continued home healthcare services Family Rehab provided. *Id.* at *2–3.

After an initial opinion on jurissdiction was reversed by the Fifth Circuit, on remand, the Northern District court temporarily "restrained [HHS] from withholding Medicare payments to Family Rehab to effectuate the recoupment of any alleged overpayments." *Id.* at *3. The court waived a bond. *Id.* The analysis in the opinion is useful and thorough. This court applies a similar analysis to these similar facts and issues, and reaches a similar result.

**C.  Analysis**

**1.  A Substantial Likelihood of Success on the Merits**

As in *Family Rehab*, Adams EMS's procedural due process claim sufficiently provides a basis for finding a likelihood of success on the merits. Three factors are weighed when determining whether adequate procedural due process has been provided:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 332 (1976).

Adams EMS has a property interest in receiving the Medicare payments it has earned for its ambulance services. That interest is violated by HHS's failure to provide the procedures for, and to timely adjudicate, Adams EMS's administrative appeal from the overpayment finding. An administrative law judge is required by statute to issue a decision on an appeal of a Medicare overpayment claim within 90 days. 42 U.S.C. § 1395ff(d)(1)(A). Adams EMS requested a hearing before an administrative law judge on February 12, 2018. (Docket Entry No. 1 at ¶ 36). It was

entitled to a decision within 90 days, by May 13, 2018. It still has not received a hearing. It anticipates—based on a timeline that the Fifth Circuit found HHS "effectively conceded"—will take at least three to five years. *Id.* at ¶ 22; *Family Rehab.*, 886 F.3d at 500. There is a high risk that Adams EMS will be deprived of its property interest without receiving statutorily required procedural protections.

HHS argues that the escalation procedures provided under 42 U.S.C. § 1395ff(d)(3)(A) sufficiently protect Adams EMS's property interest. (Docket Entry No. 10 at 6). At oral argument, HHS cited *Eldridge* in support of this position. HHS's argument is unpersuasive. First, *Eldridge* concerned whether "an evidentiary hearing is . . . required prior to the termination of disability benefits . . . ." 424 U.S. at 349. This case concerns whether HHS violated Adams EMS's procedural due process rights after it imposed recoupment, by failing to provide a hearing before an administrative law judge within the required 90 days.

Second, escalation does not provide the same procedural protections as a hearing before an administrative law judge under the statutory scheme. When a party requests review before an administrative law judge, that judge must "conduct and conclude a hearing." 42 U.S.C. § 1395ff(d)(1)(A). When a party requests an escalation to the Medicare appeals council, the council may, but is not required to, conduct additional proceedings, including a hearing. 42 C.F.R. § 405.1108(d)(2). The council may instead issue a decision based on the record without supplementation, remand the case to the administrative law judge, or dismiss the request. *Id.* at § 405.1108(d). Escalation does not adequately protect the procedural safeguards the statute provides the appealing party.

9

Adams EMS has demonstrated a substantial likelihood of success on the merits of its procedural due process claim. This factor weighs in favor of granting the temporary restraining order.

### 2. Irreparable Injury

HHS seeks recoupment of $401,611.80 from Adams EMS. Adams EMS has alleged, multiple times, that it will be forced to file bankruptcy and close its doors if HHS continues to recoup that amount. (Docket Entry No. 1 at ¶¶ 1, 44, 50, 56, 62, 76, 80, 83). Obiefuna Monwe, the owner of Adams EMS, stated in a declaration that:

> [p]rior to Defendant's imposition of recoupment in 2017, Petitioner submitted an extended repayment plan. However, Novitas Solutions, Inc. was unable to arrange for the supplier's extended repayment plan because the $418,035 overpayment had already been referred to the Department of Treasury for collection. Furthermore, Plaintiff's annualized gross proceeds were approximately $233,559.70 when recoupment was imposed in 2017, and when it contemplated a repayment plan. However, a 60-month repayment plan required an approximate $8,880.00 initial payment, and the supplier lacked sufficient cash resource for the first payment. Additionally, the supplier could not make monthly payments because, ultimately, such payments would have cost the supplier approximately $106,500.00 per year, which amounted to about 45% of gross annual revenues and was not feasible.

(Docket Entry No. 8 at ¶ 5).

At the temporary restraining order hearing, Adams EMS presented undisputed evidence that it has two employees, down from 12 in 2016, and has had to sell one of its transport vehicles due to financial constraints. Allowing HHS to recoup the alleged overpayment throughout the next three to five years will cause Adams EMS to close its doors. The only remedy that will adequately protect Adams EMS is ordering HHS to suspend its recoupment efforts. This factor weighs in favor of granting the temporary restraining order.

### 3. Balancing the Injury to the Plaintiffs Against the Harm to the Defendants.

If the temporary restraining order is not granted, Adams EMS will go out of business and employees will lose jobs. (Docket Entry No. 5 at 2). The harm to Adams EMS is irreparable and severe. The harm to HHS is minimal. The overpayment amount HHS seeks to recoup is small in comparison to the $7.5 million overpayment amount in *Family Rehab*, and HHS will be able to recoup the money if the administrative law judge rules in its favor. HHS is not prejudiced by the delay; Adams EMS is. This factor weighs in favor of granting the temporary restraining order.

### 4. The Public Interest

As in *Family Rehab*, Adams EMS is not under HHS scrutiny for providing poor or inadequate services to Medicare patients. *Family Rehab.*, 2018 WL 2670730, at *3. While the public has an interest in seeing that government programs are not abused, the harm to HHS from granting the temporary restraining order is minimal. Adams EMS's patients, and others in need of ambulance services in the area Adams EMS serves, will be harmed if Adams EMS is forced to stop providing services. This factor weighs in favor of granting the temporary restraining order.

## III. Conclusion

For the reasons explained above, Adams EMS's temporary restraining order application, (Docket Entry No. 5), is granted. The court issues a separate order.

SIGNED on July 11, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge