**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ADAMS EMS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-1443 |
| | § | |
| ALEX M. AZAR II, SECRETARY, | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HEALTH AND HUMAN SERVICES | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

In May 2018, Adams EMS, Inc. sued Alex M. Azar II, the Secretary of the United States Department of Health and Human Services ("HHS"), over a Medicare reimbursement dispute. (Docket Entry No. 1). Adams seeks an injunction, a declaratory judgment, mandamus relief, attorney fees, and costs. (Docket Entry No. 1 at ¶ 89). In July 2018, the court temporarily restrained the government from recouping the alleged overpayment to Adams. (Docket Entries No. 17, 21, 22). The parties argued the government's motion to dismiss for lack of subject-matter jurisdiction and Adams's request for a preliminary injunction in August 2018. (Docket Entry No. 35). In September, Adams supplemented its financial disclosures, the government responded, and Adams replied. (Docket Entries No. 36, 43, 46).

Based on the parties' briefs, counsels' arguments, the record, and the applicable law, the court denies the government's motion to dismiss. The court also enjoins the government from withholding any Medicare receivables from Adams to recoup the alleged overpayments in the claim pending an administrative-law-judge hearing. The reasons are set out in detail below.

# I.     Background

## A.     Medicare Program and Appeal of Audited Payment Decisions

Medicare Administrative Contractors reimburse beneficiaries' ambulance transport when other transport means are unavailable or inadvisable. *See* 42 U.S.C. § 1395x(s)(7); 42 C.F.R. § 410.40(d). HHS hires contractors, known as Zone Program Integrity Contractors, to complete post-payment review of reimbursements to identify and investigate cases of suspected fraud. *See* 42 U.S.C. § 1395kk-1. "When a [Zone Program Integrity Contractor] identifies an overpayment, it notifies the relevant [Medicare Administrative Contractor], which then issues a demand letter to the provider." *Family Rehab.*, 886 F.3d at 499. Ambulance suppliers participating in Medicare can appeal a Zone Program Integrity Contractor's adverse audit. 42 U.S.C. § 1395ff. This audit and related appeals are at issue in this case.

The Fifth Circuit recently explained the four-step administrative appeals process available to providers like Adams:

> First, [a provider] may submit to the [Medicare Administrative Contractor] a claim for redetermination of the overpayment. Second, it may ask for reconsideration from a Qualified Independent Contractor . . . hired by [HHS's Centers for Medicare and Medicare Services] for that purpose. If the [Qualified Independent Contractor] affirms the [Medicare Administrative Contractor's] determination, the [Medicare Administrative Contractor] may begin recouping the overpayment by garnishing future reimbursements otherwise due the provider.

> Third, the provider may request *de novo* review before an [administrative law judge] within the Office of Medicare Hearings and Appeals[,] an agency independent of [the Centers for Medicare and Medicaid Services]. The [administrative-law-judge] stage presents the opportunity to have a live hearing, present testimony, cross-examine witnesses, and submit written statements of law and fact. The [administrative law judge] "shall conduct and conclude a hearing . . . and render a decision . . . not later than" 90 days after a timely request. Fourth, the provider may appeal to the Medicare Appeals Council[,] an organization independent of both [the Centers for Medicare and Medicaid Services] and [the Office of Medicare Hearings and

2

Appeals]. The [Medicare Appeals] Council reviews the [administrative law judge's] decision *de novo* and is similarly required to issue a final decision within 90 days. Furthermore, if the [administrative law judge] fails to issue a decision within 90 days, the provider may "escalate" the appeal to the [Medicare Appeals] Council, which will review the [Qualified Independent Contractor's] reconsideration.

*Family Rehab.*, 886 F.3d at 499–500 (footnotes and citations omitted).

When a party escalates the appeal to the Medicare Appeals Council under 42 C.F.R. § 405.1016, the Council must issue a final decision, dismiss the claim, or remand the case to the chief administrative law judge within 180 days of receiving the escalation. 42 C.F.R. § 405.1100. Because escalated appeal can occur only after the administrative law judge has failed to issue an order within 90 days, and because the Council has 180 days to issue a decision, it can take a party 270 days, or more, to receive a decision after requesting review before an administrative law judge.

Adams alleges that a large and growing backlog of Medicare appeals from an increased number of claims has slowed the time for a supplier to complete the Medicare appeals process. (Docket Entry No. 1 at ¶¶ 15–16). From January to September 1, 2017, 167,899 new claims for adjudication had been filed, but only 76,000 of a total of 595,000 outstanding claims were adjudicated. (*Id.* at ¶ 20). The predicted wait times between obtaining a reconsideration decision from a Qualified Independent Contractor and appearing before an administrative law judge is between three to five years, and sometimes longer. (*Id.* at ¶ 22); *Family Rehab.*, 886 F.3d at 500 ("According to [the plaintiff]—and effectively conceded by the government—it will be unable to obtain an administrative-law-judge hearing for at least another three to five years."). The government admits that "it is uncertain when Adams will receive an [administrative-law-judge] hearing." (Docket Entry No. 9 at 6).

## B. Facts

On December 27, 2016, Health Integrity, L.L.C., a Zone Program Integrity Contractor, determined that Adams had received $418,035 in overpayments for reimbursement claims submitted from July 17, 2012, to January 15, 2016. (Docket Entry No. 1 at ¶ 26). The known overpayment was $14,846; the $418,035 amount was extrapolated through statistical sampling. (*Id.*). Novitas Solutions, a Medicare Administrative Contractor, notified Adams of the alleged overpayment and recoupment obligation. (*Id.* at ¶ 27). Adams claims that the notice "was not accompanied by any of the essential statistical data used to calculate the overpayment, nor did it include critical evidence regarding the audit." (*Id.*).

On February 7, 2017, Adams initiated the first step of the Medicare appeals process by asking Novitas Solutions for a redetermination of Health Integrity's overpayment determination. (*Id.* at ¶ 28). Adams argued that Health Integrity failed to adhere to the statutory and regulatory guidelines in denying the claims comprising the extrapolation sample. (*Id.* at ¶ 29). Adams also argued that the extrapolation was not accurate because Health Integrity's statistical sampling methodology did not conform to statutory and regulatory guidelines. (*Id.*). On April 5, 2017, Novitas Solutions sustained the overpayment determination. (*Id.* at ¶ 30).

On June 9, 2017, Adams initiated the second step of the appeals process by asking a Qualified Independent Contractor to reconsider the Novitas Solutions decision. (*Id.* at ¶ 31). On August 15, 2017, the Qualified Independent Contractor, C2C Innovative Solutions, Inc., affirmed the Novitas Solutions redetermination, stating that "the sample size used by [Health Integrity] was not adequate to justify this demand amount," and that Health Integrity "would have had to recalculate the demand amount based on a different (more conservative) extrapolation

methodology." (*Id.* at ¶ 32). On December 15, 2017, C2C Innovation Solutions reopened its August 15 decision and revised it as "partially favorable." (*Id.* at ¶ 33). Adams still lost on each individual claim in the C2C Innovation Solutions' revised decision, which again stated that the sample size used by Health Integrity was inadequate to justify the demand amount. (*Id.* at ¶ 34). Health Integrity then issued a reconsideration decision, but that decision did not recalculate the overpayment amount. (*Id.* at ¶¶ 34–35).

On February 12, 2018, Adams requested a hearing before an administrative law judge, arguing that C2C Innovation Solutions failed to adhere to the statutory and regulatory guidelines when it denied the sample claims, and that the statistical sampling methodology was improper. (*Id.* at ¶ 36). Adams alleges that, "[b]ased on Defendant's recent reports, the hearing and decision that is required within 90 days may not be available for at least another three to five years due to the serious backlog of agency appeals." (*Id.* at ¶ 37).

Novitas Solutions recalculated the recoupment amount and reduced Adams's liability to $401,611.80 from $418,035, stating that it had used a new methodology.[1] (*Id.* at ¶ 38). Adams alleges that, because the use of statistical sampling was invalidated, Novitas Solutions should have limited its overpayment and recoupment to $14,846, the actual overpayment amount. (*Id.*). Instead, HHS has threatened to collect $418,035, the original overbilling estimate. (*Id.* at ¶ 39).

Federal courts have jurisdiction over a "final decision" of HHS "arising under" the Medicaid Act. 42 U.S.C. § 405(g)–(h); 42 U.S.C. § 1395ff(b)(1)(A). Although Adams did not escalate its case to the Medicare Appeals Council, the final level of administrative appeals, Adams claims it has

---

[1] Adams does not explain how Novitas Solutions' new methodology differed from the original methodology.

exhausted administrative remedies because HHS failed to provide a hearing before an administrative law judge within 90 days, as required. (Docket Entry No. 1 at ¶ 40).

Adams claims that if the government initiated recoupment of the $418,035, "[a] successful business valued at $1 million would be destroyed. Twelve valuable employees would be terminated." (*Id.* at ¶ 1). To prevent that injury, Adams seeks injunctive relief, a declaratory judgment, attorney fees, and costs. (*Id.* at ¶ 89). Adams also requests mandamus relief, arguing that the court must compel HHS to issue another reconsideration decision in accordance with C2C Innovation Solutions' findings because Health Integrity did not recalculate the overbilling amount in its reconsideration decision. (*Id.* at ¶¶ 66–73).

## II. The *Family Rehab* Case

In *Family Rehab., Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018), a Zone Program Integrity Contractor determined that Family Rehabilitation, Inc., a home-health agency that generated most of its revenue from Medicare, received $7.8 million in Medicare overpayments. *Family Rehab.*, 886 F.3d at 498–499. The Zone Program Integrity Contractor did not calculate the exact overpayment amount; instead, it determined an estimate "us[ing] a statistical method to extrapolate the alleged overbilling rate." *Id.* at 499. A Medicare Administrative Contractor then demanded that Family Rehab repay the $7.8 million. *Family Rehab., Inc. v. Azar*, No. 17-3008, 2018 WL 3155911, at *2 (N.D. Tex. June 28, 2018).

Family Rehab, "challenging both the initial audit results and the extrapolation methodology, exhausted the first two stages of th[e] administrative appeals process." *Family Rehab.*, 886 F.3d at 499. First, Family Rehab petitioned the Medicare Administrative Contractor for a redetermination of its initial findings. *Id.* The Medicare Administrative Contractor reduced the amount owed from

$7.8 million to $7.6 million.  *Id.*  Second, Family Rehab "appealed the [Medicare Administrative Contractor's] redetermination to the [Qualified Independent Contractor]."  *Family Rehab.*, 2018 WL 3155911, at *2.  Although Family Rehab, in accordance with administrative requirements, requested an administrative-law-judge hearing, the government began to recoup the alleged overpayment.  *Id.* Family Rehab laid off almost 89% of its staff and cut its patient numbers from 289 to 8 as a result of the recoupment.  *Family Rehab., Inc. v. Azar*, No. 17-3008, 2018 WL 2670730 (N.D. Tex. June 4, 2018), at *1.  Family Rehab brought due process and *ultra vires* claims against HHS, seeking injunctive relief.  *Id.* at 2.  The plaintiff had not escalated its case to the Medicare Appeals Council before filing suit.  *Family Rehab.*, 886 F.3d at 499.

The Fifth Circuit held that the district court had jurisdiction over Family Rehab's due process and *ultra vires* claims under the *Eldridge* collateral-claim exception to the final agency decision requirements of 42 U.S.C. § 405(g) and (h).  *Family Rehab.*, 886 F.3d at 500–01.  The panel reasoned that Family Rehab's due process and *ultra vires* claims were "plainly collateral" because "Family Rehab seeks only a hearing before the recoupment of its Medicare revenues," which does "not require the court to wade into the . . . merits of recoupment."  *Id.* at 503.

The Fifth Circuit rejected Family Rehab's assertion of federal-question jurisdiction under *Illinois Council*'s preclusion-of-judicial review exception.  *See Shalala v. Ill. Council on Long Term Health Care, Inc.*, 529 U.S. 1, 23 (2000). The panel explained that the "exception is narrow and applies only when channeling a claim through the agency would result in the '*complete* preclusion of judicial review.'"  *Family Rehab.*, 886 F.3d at 504–05 (emphasis in original).  Family Rehab failed to show "either that bringing its claim administratively is 'a legal impossibility,' or that it

faces 'a serious practical roadblock to having [its] claims reviewed in any capacity, administratively or judicially.'" *Id.* at 504–05; *see also Ill. Council*, 529 U.S. at 19.

Finally, the panel held that the district court lacked mandamus jurisdiction under 28 U.S.C. § 1361. Although "§ 405(h) does not preclude mandamus jurisdiction," which "exists if the action is an attempt to compel an [agency] to perform an allegedly nondiscretionary duty owed to the plaintiff," the mandamus statute "does not provide jurisdiction over requests 'for . . . injunctive relief.'" *Id.* at 505–06. The Fifth Circuit also clarified that a plaintiff is not required to exhaust administrative remedies to invoke mandamus jurisdiction. *Id.* at 506. But because Family Rehab requested only an injunction, and not mandamus, "§ 1361 does not confer jurisdiction because [the provider did] not seek mandamus relief." *Id.*

## III.    The Motion to Dismiss

### A.    The Government's Primary Argument—Lack of Subject-Matter Jurisdiction

#### 1.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1996) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of the plaintiff's cause of action, the district court has substantial authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.3d at 413. "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [the] plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

"The Medicare Act severely restricts the authority of federal courts by requiring 'virtually all legal attacks' under the Act be brought through the agency." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012). In the normal course, because a claimant must obtain a final decision from HHS before seeking relief in federal court, a provider like Adams "may come to district court only after either (1) satisfying all four stages of administrative appeal, i.e., after the [Medicare Appeals] Council has rendered a decision, or (2) after the provider has escalated the claim to the [Medicare Appeals] Council and the Council acts or fails to act within 180 days. *Family Rehab.*, 886 F.3d at 501 (citations omitted); U.S.C. §§ 405(g)–(h); 42 C.F.R. § 405.1132. Three narrow exceptions excuse exhaustion: (1) the *Eldridge* collateral-claim exception under § 405(g); (2) the preclusion-of-judicial-review exception under 28 U.S.C. § 1331; and (3) mandamus jurisdiction under 28 U.S.C. § 1361. *Family Rehab.*, 886 F.3d at 501; *see Mathews v. Eldridge*, 424 U.S. 319, 330–31 (1976); *Ill. Council*, 529 U.S. at 19; *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 764 (5th Cir. 2011). Adams concedes that its claims arise under the Medicare Act.

(Docket Entry No. 1 at ¶¶ 7, 14; Docket Entry No. 25 at 1–2, 10–11). Adams also admits that it did not escalate its appeal to the Medicare Appeals Council. (Docket Entry No. 1 at ¶¶ 36–40; Docket Entry No. 25 at 1–2, 10–11). Adams must therefore satisfy an exception for the court to adjudicate this action. While Adams's complaint asserts jurisdiction under the collateral-claim, preclusion-of-judicial-review, and mandamus exceptions, its response to the government's motion to dismiss invokes only collateral-claim and mandamus jurisdiction.

The government argues that the court does not have jurisdiction because "Congress has not waived sovereign immunity." (Docket Entry No. 9 at 8). But Congress enacted 42 U.S.C. § 405(g), permitting claimants to sue HHS in federal court. The government contends that § 405(g)'s final agency requirement is a condition precedent of the statute's waiver of sovereign immunity. Fifth Circuit case law, however, implies that if a plaintiff satisfies one of the exceptions to the final agency requirement, the government consents to suit. *See Family Rehab.*, 886 F.3d at 501.

## 2. The Collateral-Claim Exception

The *Eldridge* collateral-claim exception is governed by a two-pronged test. Jurisdiction exists over Medicare claims: (1) "that are 'entirely collateral' to a substantive agency decision" and (2) "for which 'full relief cannot be obtained at a postdeprivation hearing.'" *Family Rehab.*, 886 F.3d at 501 (citing *Eldridge*, 424 U.S. at 330–32). "For a claim to be collateral, it must not require the court to 'immerse itself' in the substance of the underlying Medicare claim or demand a 'factual determination' as to the application of the Medicare Act." *Id.* (citing *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285–286 (5th Cir. 1999)). And because "the claim must seek . . . relief that would be unavailable through the administrative process," the plaintiff cannot request "'administrative,' i.e., . . . substantive, permanent relief." *Id.* In short, a plaintiff "may bring claims

that sound only in constitutional or procedural law . . . and request that benefits be maintained temporarily until the agency follows the statutorily or constitutionally required procedures." *Id.* at 503. Under the second prong, a party must "rais[e] at least a colorable claim' that erroneous recoupment will 'damage [it] in a way not recompensable through retroactive payments.'" *Id*. at 504 (citing *Eldridge*, 424 U.S. at 331).

Applying these principles in *Family Rehab.*, the Fifth Circuit held that the district court had jurisdiction under § 405(g). First, the panel found that Family Rehab's claims were "plainly collateral." *Id*. The panel reasoned that "Family Rehab seeks only [temporary relief and] a hearing before the recoupment of its Medicare revenues," which "only require the court to determine how much process is [due] under the Constitution and federal law before recoupment." *Id.* Family Rehab also satisfied the exception's second prong by alleging that it would suffer the irreparable harm of bankruptcy if the government imposed recoupment. That contention "'rais[ed] at least a colorable claim' that erroneous deprivation will 'damage [it] in a way not recompensable through retroactive payments." *Id*. at 504 (citing *Eldridge*, 424 U.S. at 331).

Adams seeks identical relief, an injunction "that requires [HHS] to suspend recoupment until it can provide a hearing and decision within 90 days." (Docket Entry No. 1 at ¶¶ 3, 47, 53, 59, 65). Because that relief is temporary and "unrelated to the merits of the recoupment," *Family Rehab.*, 886 F.3d at 503, it is collateral under *Eldridge*. And, as in *Family Rehab.*, Adams asserts that it will suffer irreparable injury, bankruptcy, if the government collects the alleged overpayment. It is apparently undisputed that Adams has already downsized from 12 to 2 employees since 2016. Adams cannot obtain full relief at a postdeprivation hearing. Because Adams satisfies the collateral-claim exception's two prongs, the court has jurisdiction over its due process and *ultra vires* claims.

### 3.     Federal-Question Jurisdiction

Jurisdiction exists over Medicare claims under 28 U.S.C. § 1331 if administrative obstacles "would not simply channel review through [HHS,] but would mean no review at all." *Ill. Council*, 529 U.S. at 19. "This exception is narrow and applies only when channeling a claim through the agency would result in the '*complete* preclusion of judicial review.'" *Family Rehab.*, 886 F.3d at 504–05 (emphasis in original) (citing *Ill. Council*, 529 U.S. at 23). A plaintiff asserting jurisdiction under the exception "must show either that bringing its claim administratively is 'a legal impossibility,' or that it faces 'a serious practical roadblock to having [its] claims reviewed in any capacity, administratively or judicially.'" *Id.* at 505. The Fifth Circuit has "required channeling so long as 'there potentially were other parties with an interest and a right to seek administrative review.'" *Id.*

In *Family Rehab.*, the panel held that the district court did not have federal-question jurisdiction because, "[g]iven the thousands of ongoing Medicare appeals[,] there is no dearth of third parties with both the incentives and capacity to challenge the timeliness of [administrative-law-judge] hearings." *Id.* Here, the court does not have jurisdiction under § 1331 because Adams has not alleged facts that if proven would show that administrative review is "a legal impossibility." As in *Family Rehab.*, Adams contends that administrative-law-judge review is significantly delayed; Adams does not claim that review is altogether unavailable.

### 4.     Mandamus Jurisdiction

Under 28 U.S.C. § 1361, "mandamus jurisdiction exists if the action is an attempt to compel an officer or employee of the United States or its agencies to perform an allegedly nondiscretionary duty owed to the plaintiff." *Wolcott*, 635 F.3d at 766. Because mandamus requires the government

to affirmatively perform an action, injunctive relief that mandates forbearance does not confer jurisdiction under § 1361. *Id.* at 766–67. Here, the government argues that Adams must have exhausted all available remedies to invoke mandamus jurisdiction. (Docket No. 9 at 11). That contention, however, conflates jurisdiction with the merits. *Family Rehab.*, 886 F.3d at 506 ("We have cautioned to 'avoid tackling the merits under the ruse of assessing jurisdiction.'"). Further, in dicta, the Fifth Circuit has clarified that plaintiffs are not required "to exhaust all other avenues of relief" to establish mandamus jurisdiction. *Id.* at 506.

In *Family Rehab.*, the Fifth Circuit held that mandamus was unavailable because the provider requested an injunction instead of an order compelling the government to affirmatively discharge a duty. *Id.* By contrast, in *Wolcott*, the panel held that mandamus jurisdiction existed over three counts "because the ultimate relief [the plaintiff] seeks . . . is an order compelling the defendants to perform a nondiscretionary duty." *Wolcott*, 635 F.3d at 766. In this case, Adams asserts mandamus jurisdiction to compel Novitas Solutions to issue a new recalculation letter limiting its liability from $418,035 to $14,846 because C2C Innovative Solutions invalidated Health Integrity's extrapolation methodology. (Docket Entry No. 1 at ¶¶ 66–73).

But case law limits mandamus to due process rights, not particular outcomes. In *Family Rehab.*, the Fifth Circuit implied that mandamus jurisdiction would exist if the provider sought an order compelling the government to provide a timely hearing before an administrative law judge. *Family Rehab.*, 886 F.3d at 506. In *Wolcott*, the panel found mandamus jurisdiction because the plaintiff sought an order compelling the government to abide by the law and binding administrative decisions. *Wolcott*, 635 F.3d at 766. By contrast, Adams asks for an order that compels a certain

result, the limitation of its liability to $14,846. That request is not analogous to the relief sought in *Family Rehab.* or *Wolcott*.

Further, the duty at issue is discretionary. The authority cited, 42 U.S.C. § 1395ff(c) and 42 C.F.R. §§ 405.960–405.978, affords process through the establishment of the Medicare appeals system. The statute and regulations do not impose a government obligation to reissue a recalculation letter limiting Adams's recoupment obligation to the actual overpayment amount. The Medicare Claims Processing Manual is instructive. The Manual provides that "[if] the payment amount must be . . . recomputed, it effectuates the decision within 30 days . . . The amount must be computed as soon as possible." MEDICARE CLAIMS PROCESSING MANUAL Ch. 29 § 320.9. While the Manual establishes a duty to recalculate, it does not mandate a particular result or methodology.

Adams has failed to allege a nondiscretionary duty, and the court cannot exercise jurisdiction under § 1361.

### B.     The Government's Alternative Argument—Failure to State a Claim

The government's motion to dismiss and reply brief contest only the requested mandamus relief. (Docket Entry No. 9 at 13–15; Docket Entry No. 29 at 4). The government does not argue for dismissal because Adams failed to state a claim under Count 1 (Violation of Procedural Due Process of Law); Count 2 (Violation of the Medicare Act); Count 3 (Violation of the Statutory Limitation on Recoupment); and Count 4 (*Ultra Vires*). Notwithstanding, the government seeks dismissal of all claims by framing the case that is, "[a]t its heart [sounds] in mandamus," because Adams "seeks to reduce the amount of an overpayment determination that is still subject to the administrative review process." (Docket Entry No. 29 at 1).

That argument is unavailing. While Adams seeks mandamus relief in the form of an order compelling HHS to reduce its overpayment liability, Adams also seeks declaratory and injunctive relief that are not mandamus in nature. The complaint states that the "[p]laintiff is entitled to injunctive relief that requires Defendant to suspend recoupment until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures." (Docket Entry No. 1 at ¶¶ 3, 47, 53, 59, 65). The complaint is not limited to mandamus, and the court only reviews whether Adams failed to state a claim under Count 5 (Mandamus).

### 1.    The 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is possible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550, U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (internal quotation marks and alteration omitted) (quoting *Twombly*, 550 U.S. at 558).

## 2. The Mandamus Standard

"Mandamus may only issue when (1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists." *Wolcott*, 635 F.3d at 768. The Fifth Circuit has clarified that "[m]andamus is only appropriate when the duty is 'so plainly prescribed as to be free from doubt'; thus, mandamus is not available to review discretionary acts of agency officials." *Id.* Further, "[a]n alternative remedy, including an administrative remedy, is adequate if it is 'capable of affording full relief as to the very subject matter in question.'" *Id.*

Even if this court had mandamus jurisdiction, Adams's complaint alleges contradictory facts that undermine its claim for mandamus relief. First, Adams alleges that C2C Innovative Solutions' "reviewers stated 'the sample size used by [Health Integrity] was not adequate to justify [$418,035]'

and that the [Health Integrity] must recalculate the overpayment 'using a different (more conservative) extrapolation methodology.'" (Docket Entry No. 1 at ¶¶ 34, 67). Second, Adams alleges that Novitas Solutions, which issued a recalculation letter that lowered the demand amount to $401,661 from $418,035, "was required to have limited recovery to the actual overpayment or $14,846." (*Id.* at ¶ 70). But, as the government observes, (Docket Entry No. 9 at 6), Novitas Solutions calculated the reduced sum using "a *new* methodology." (Docket Entry No. 1 at ¶ 69). Adams does not explain whether Novitas Solutions "us[ed] a different (more conservative) extrapolation methodology" as required by C2C Innovative Solutions in August 2017. From the face of the complaint, it seems plausible that Novitas Solutions followed C2C Innovative Solutions' guidance because the recalculation amount was lower than the original overpayment estimate and the result of a new methodology. It appears that the Novitas Solutions discharged the duty allegedly owed to Adams that it now seeks this court to enforce through mandamus.

Adams responds that "[i]nstead of limiting overpayment to the actual amount," $14,846, HHS "extrapolated and determined an *entirely new* overpayment of $401,661 contrary to" the statutory and regulatory guidelines. (Docket Entry No. 25 at 14–15). But that contention contradicts the central premise of Adams's mandamus claim—C2C Innovative Solutions required a new estimate and, according to the complaint and response, Novitas Solutions delivered a reduced overbilling amount based on a new methodology. The government correctly argues that Adams "provides no factual or legal basis for its belief that it has a clear right and the Secretary a non-discretionary duty to recalculate the overpayment in the specific manner requested by Adams." Count 5 (Mandamus) is dismissed, with prejudice.

## IV.     The Preliminary Injunction

Adams maintains that HHS has threatened to recoup the original overbilling estimate of $418,035.  (Docket Entry No. 1 at ¶ 1).  In June 2018, Adams claimed that the government had imposed recoupment.  (Docket Entry No. 5 at 2).  In July, the court temporarily restrained HHS from collecting the alleged overpayment amount.  (Docket Entries No. 17, 21, 22).  In August 2018, the court heard argument on whether to enjoin the government from recouping any Medicare funds from Adams.  (Docket Entry No. 35).  Adams asserts that if the government collects the alleged overpayment amount, it will be forced to file for bankruptcy before it has an opportunity to contest the recoupment before an administrative law judge.  (Docket Entry No. 1 at ¶ 1; Docket Entry No. 46 at 1).  Adams requests that recoupment be suspended until HHS complies with the statutory procedures that protect against premature and excessive collection.  (Docket Entry No. 5 at 9).

### A.     The Legal Standard

To obtain a preliminary injunction, Adams must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).  "[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence."  *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993).

**B. Analysis**

In *Family Rehab.*, the district court, on remand, preliminarily enjoined the government "from withholding Medicare payments . . . to Family Rehab to effectuate recoupment." *Family Rehab.*, 2018 WL 3155911, at *7. The court found that: (1) Family Rehab had demonstrated a substantial likelihood of success on its procedural due process claim by showing that HHS had not complied with statutory procedures; (2) Family Rehab had established a substantial threat of irreparable injury if HHS continued to collect the alleged overpayment; (3) the balance of injury weighed in favor of granting relief because Family Rehab would be forced to shut its doors, employees would lose jobs, and patients would lose services if the preliminary injunction was not granted, while HHS would be able to recoup any overpayments if an administrative law judge eventually ruled in the government's favor; and (4) no public interest would be disserved by granting the relief; instead, the public interest would benefit from the continued access to the services Family Rehab provided. *Id.* at 3–7. The court waived a bond. *Id.* at 7. The analysis in the opinion is useful and thorough. *See Han Ma Eum, Inc. d/b/a Coastal Home Health Care v. Azar*, No. H-18-2946 (S.D. Tex. Sep. 26, 2018) (enjoining the government from recouping Medicare payments because of the backlog of administrative-law-judge hearings). This court applies a similar analysis to these similar facts and issues, and reaches a similar result.

**1. Substantial Likelihood on the Merits**

Adams's procedural due process claim provides a basis for finding a likelihood of success on the merits. Adams claims that HHS's "discretionary recoupment has begun without first providing [it with] the procedural due process mandated under the [Constitution and] statute."

*Family Rehab.*, 2018 WL 3155911, at *4. Three factors are weighed when determining whether adequate procedural due process has been provided:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335.

Adams has a property interest in receiving and retaining the Medicare payments it has earned. That interest is violated by the government's failure to timely adjudicate Adams's administrative appeal, as required by 42 U.S.C. § 1395ff(d)(1)(A). Adams requested a hearing before an administrative law judge in February 2018. (Docket Entry No. 1 at ¶ 36). It was entitled to a decision within 90 days. Adams still has not received a hearing. Because the government conceded that it will take three to five *years* to provide one, (*Id.* at ¶ 22); *Family Rehab.*, 886 F.3d at 500, there is a high risk that the government will deprive Adams of its property interest without affording Adams the required procedural protections.

Adams's right to escalate the appeal from the administrative-law-judge level to the Medicare Appeals Council, the final administrative step, does not cure the government's due process violation. When a party requests review before an administrative law judge, that judge must "conduct and conclude a hearing." 42 U.S.C. § 1395ff(d)(1)(A). By contrast, when a party escalates their claim to the Medicare Appeals Council, the Council may, but is not required to, conduct additional proceedings, including a hearing. 42 C.F.R. § 405.1108. The Council may instead issue a decision based on the record without supplementation, remand the case to the administrative law judge, or

dismiss the request. *Id.* Escalation does not adequately protect the procedural safeguards the statute provides the appealing party.

Because Adams has demonstrated a substantial likelihood of success on the merits of its procedural due process claim, this factor weighs in favor of granting the preliminary injunction.

## 2.    Irreparable Injury

"In the Medicare withholding context, going out of business can be sufficient evidence of irreparable injury." *MaxMed Healthcare, Inc. v. Burwell*, No. SA:14-CV-988-DAE, 2015 WL 1310567, at *3 (W.D. Tex. Mar. 23, 2015). HHS seeks to collect $418,035 from Adams. Adams alleges that it will file for bankruptcy and close its doors if HHS continues to recoup that amount. (Docket Entry No. 1 at ¶¶ 1, 44, 50, 56, 62, 76, 80, 83). Adams's owner, Obiefuna Monwe, stated:

> Prior to [the government's] imposition of recoupment in 2017, [Adams] submitted an extended repayment plan. However, Novitas Solutions, Inc. was unable to arrange for the . . . repayment plan because the $418,035 overpayment had already been referred to the Department of Treasury for collection. Furthermore, [Adams's] annualized gross proceeds were approximately $233,559.70 when recoupment was imposed in 2017, and when it contemplated a repayment plan. However, a 60-month repayment plan required an approximate $8,880.00 initial payment, and the supplier lacked sufficient cash resources for the first payment. Additionally, the supplier could not make monthly payments because, ultimately, such payments would have cost the supplier approximately $106,500.00 per year, which amounted to about 45% of gross annual revenues and was not feasible.

(Docket Entry No. 8 at ¶ 5).

The government argues that Adams "cannot show that it going out of business is the result of the [government's] actions." (Docket Entry No. 43 at 2). The government claims that the "financial information [Adams] produce[d] demonstrates that it was losing money in the years before [the government] sought to recoup an overpayment, and that Adams . . . is not wholly reliant

on Medicare payments for its continued existence.  (*Id*.).  Lastly, the government contends that because Adams's disclosures were incomplete and inaccurate, the court "cannot credibly rely on the financial documentation . . . to support its claims of irreparable harm."  (*Id*. at 4).

In July 2018, Adams presented evidence that it has two employees, down from 12 in 2016, and has had to sell one of its transport vehicles due to financial constraints.  (Docket Entry No. 17).  While the court takes note of Adams's incomplete disclosures, Adams supplemented the record in September 2018.  (Docket Entry No. 36-2).  Adams's 2016 tax return shows income of $357,839 and losses of $62,945.  (*Id.* at 16).  Its 2017 return shows income of $657,203 and losses of $17,832.  (*Id.* at 5).  It is clear that Adams's financial health was improving before the government initiated recoupment.  Permitting HHS to recoup the alleged overpayment throughout the next three to five years will cause Adams to close its doors.  The only remedy that will adequately protect Adams is ordering the government to suspend its recoupment efforts.  This factor weighs in favor of granting the preliminary injunction.

### 3.    Balancing the Injury to the Plaintiffs Against the Harm to the Defendants

If the preliminary injunction is not granted, Adams will go out of business and more employees will lose jobs.  (Docket Entry No. 5 at 2).  The harm to Adams is irreparable and severe.  The harm to HHS is minimal.  The overpayment amount the government seeks to recoup is small in comparison to the $7.5 million overpayment amount in *Family Rehab*, and the government will recoup the money if an administrative law judge rules in its favor.  The government is not prejudiced by the delay; Adams is.  This factor weighs in favor of granting the preliminary injunction.

###### 4. The Public Interest

Like the provider in *Family Rehab*, Adams is not under HHS scrutiny for providing poor or inadequate services to Medicare patients. *Family Rehab.*, 2018 WL 3155911, at *7. While the public has an interest in seeing that government programs are not abused, the harm to the government from granting the preliminary injunction is minimal. Adams's patients, and others in need of ambulance services in the area Adams serves, will be harmed if Adams files for bankruptcy and closes its doors. This factor weighs in favor of granting the preliminary injunction.

Although the government suggests that the alleged overpayment to Adams was the product of fraud, the government does not make a factual or legal showing necessary to support recoupment at this stage, on that ground. The suggestion raises issues outside the narrow questions of jurisdiction and whether the court should enjoin the government from recouping the alleged overpayment in advance of a hearing. On this record, Adams has established that it is entitled to a preliminary injunction.

### E. Conclusion

For the reasons explained above, Adams's request for a preliminary injunction, (Docket Entry No. 1 at ¶¶ 80–86), is granted. The government is enjoined from withholding Medicare payments to Adams to recoup the alleged overpayments until the entry of final judgment in this case. The court issues a separate order.

SIGNED on October 23, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

23